IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

CLARENCE EUGENE JONES,

          Plaintiff,         Civil No. 09-29-TC

          v.               FINDINGS AND
                             RECOMMENDATION

MAX WILLIAMS, et al.,

          Defendants.

COFFIN, Magistrate Judge.

     Plaintiff is an inmate in the custody of the Oregon Department of Corrections housed at the Oregon State Penitentiary at the time of the incidents giving rise to his claims in this case. Plaintiff's Amended Complaint alleges that defendants violated his civil rights by: 1) disciplining him in violation of the First Amendment; 2) assigning him to handle pork as part of his work assignment in violation of the First Amendment; 3) not processing grievances in violation of

1 - FINDINGS AND RECOMMENDATION

the First Amendment; and 4) violating plaintiff's right to equal protection by initiating a disciplinary action that was racially discriminatory. Amended Complaint (#15)[1]  Plaintiff seeks money damages and injunctive relief. Id. Defendant move for summary judgment. (#73).

Plaintiff alleges that defendant Ridderbusch violated his First Amendment right to free speech when he  gave plaintiff a "daily failure" on January 10, 2007, because plaintiff complained that he was being treated differently in relation to his work assignment. Amended Complaint (#15) ¶ 23-25.

In order to establish a claim for retaliation, a plaintiff must allege both "that the type of activity he engaged in was protected under the First Amendment and that the state impermissibly infringed on his right to engage in the protected activity." Rizzo v. Dawson, 778 F.2d 527, 531. (9th Cir. 1985).  Thus, an inmate claiming retaliation  "must do more than allege retaliation because of the exercise of his First Amendment rights ... he must  also allege that the prison authorities' retaliation action did not advance legitimate goals of the correctional institution or was not tailored narrowly enough to achieve such goals. Id., at p. 532.  See

---

[1]Plaintiff's briefing on summary judgment characterizes the alleged violations of his rights slightly differently.   In plaintiff's Memorandum (#116) plaintiff alleges that his rights were violated where defendants: 1) compelled him to prepare pork in the OSP kitchen; 2) mixed beef and pork on one occasion at OSP without informing plaintiff; 3) used grills to cook pork at OSP without indicating that they had done so; 4) violated his right to freedom of speech; and 5) discriminated in the enforcement of misconduct rules.  Plaintiff's Memorandum (#116)

also, Pratt v. Rowland, 65 F.3d 802 (9th Cir. 1995); Schroeder
v. McDonald, 55 F.3d 454, 461-62 (9th Cir. 1995); Barnett v.
Centoni, 31 F.3d 813, 815 (9th Cir. 1994).

The relevant facts concerning plaintiff's retaliation
claim are as follows. On January 8, 2007, defendant
Ridderbusch was supervising inmates in the OSP kitchen when,
in the presence of other inmates, plaintiff allegedly accused
Ridderbusch of being a racist and discriminatory in his hiring
process, and threatened to sue him in federal court.
Declaration of Richard Ridderbusch (#77), p. 4. Ridderbusch
further declares: "Inmate Jones did not know me, his
statements were accusatory and inflammatory and were made in
a public place. There was a serious risk that other inmates
would become riled creating a security concern. Therefore, I
issued Inmate Jones a daily fail for his poor attitude. If
our conversation was private and Inmate Jones was expressing
his personal opinion, I would not have issued a daily fail.
... I am not concerned that Inmate Jones files lawsuits or
even that he names me in his lawsuits. In this case, Inmate
Jones was acting in a threatening manner in order to coerce me
into making a decision. It is the threat and coercion
combined with the security issues given the circumstances that
is the concern, not the fact that he files lawsuits." Id.

Plaintiff denies that he called defendant Ridderbusch a
racist or accused him of discrimination in front of other
inmates. Plaintiff's Reply (#116) p. 6; Plaintiff's Concise

Statement of Facts (#117) p. 1 Plaintiff argues that the daily failure "Exhibit H says nothing about this belated injection of falsehood, which did not occur at all." Plaintiff's Reply (#116) p. 6. "One would think Ridderbusch would have mentioned such important fact at the time it was made in the daily failure." Id.

The Record of Inmate Daily Performance Failure indicates that plaintiff received a "daily failure" because of his "attitude." Affidavit of Clarence Jones (#118) Exhibit H. It further indicates: [plaintiff] "accused me of discriminating in hiring, threatened to sue me in federal court. Was not receptive to earning his way. Tried to tell him his ability to get a job was based on performance." Id.

The fact that the report does not specifically mention that plaintiff called defendant a racist does not necessarily mean it did not occur. The accusation by a black person that he has been discriminated against arguably infers a racial motivation or racism. Whether or not plaintiff called defendant Ridderbusch a racist does not create a genuine issue of material fact sufficient to defeat defendants' motion for summary judgment as to this claim.

Defendants have a "legitimate goal in inmate rehabilitation and the development of professional attitudes and interpersonal communication." Memo in Support (#74) p. 5. The "daily failure" report supports Ridderbusch's explanation that plaintiff was failed because of his "attitude" and the

4 - FINDINGS AND RECOMMENDATION

argument that plaintiff's conduct was "coercive," *ie* that plaintiff was attempting to get a job transfer by means other than performance.

In assessing summary judgment, courts should "afford appropriate deference and flexibility to prison officials in the evaluation of proffered legitimate reasons for conduct alleged to be retaliatory." Pratt v. Rowland, *supra*, 65 F.3d at 807; *see also*, Safely v. Turner, 482 U.S. 78, 89 (1987).

It this case, defendant Ridderbusch's proffered reason for issuing the daily fail is reasonable and reflects a legitimate penological goal of appropriate inmate behavior, respect and as well institution safety and security. Where, as here, the conduct alleged to be retaliatory was supported by valid penological reasons, the retaliation claim fails and defendants is entitled to judgment as a matter of law.

Plaintiff alleges that defendants violated his rights under the free exercise clause of the First Amendment by serving him pork on May 31, 2007, by ordering plaintiff to cook pork on July 8, 2007, and by failing to ensure that the the grills are adequately cleaned after frying pork.

Plaintiff alleges that on May 31, 2007, he was served and began to eat a tamale pie when he was "told not to eat the tamale pie by a Muslim inmate who worked in the kitchen and had witnessed Defendant Nopp have pork placed with the beef to make the tamale pie." Amended Complaint (#15) p. 6. Plaintiff further alleges that he was subsequently told that

5 - FINDINGS AND RECOMMENDATION

defendant Nopp "ordered that pork be mixed with the beef and did not put up pork sign indicating the pie contained pork." Id; see also, Plaintiff's Reply (#116) p. 15.

The Declaration of Richard Nopp states that he supervised the preparation of the menu on May 31, 2007, and that "no pork was added to the meat in the tamale pie and I did not order the inmate cooks to add pork to the tamale pie."  Declaration of Richard Nopp (#79), p. 3.  Defendant Davis investigated plaintiff's complaint that pork was added to the tamale pie and concluded that no pork was added to the pie.  It was Davis' conclusion that "the inmates were telling plaintiff this to get a reaction from him." Declaration of Keith Davis (#76), p. 4.

Plaintiff's affidavit states: "On June 2, 2007, plaintiff spoke with the morning cooks who prepared the meat for making the tamale pie and was told by Tom Peacock that Nopp had ordered that pork be mixed in with the beef, and Tom Peacock personally put the pork in with the beef as Nopp stood watching, and that Nopp did not put up any 'pork' signs indicating that the tamale pie contained pork." Affidavit of Clarence Eugene Jones (#118) p. 13.

Plaintiff has also submitted the affidavit of inmate Raymond Mayes which states that "Coordinator Nopp had pork mixed in with the beef to make the tamale pie for lunch and failed to put up the no pork sign to alert inmates that the tamale pie contained pork." Affidavit of Clarence Jones (#118)

Attachment 1.

Although these conflicting affidavits may create an issue of fact as to whether defendant Nopp "'spiked' the meat used to make the tamale pie with pork, and failed to alert plaintiff the tamale pie contained pork," Plaintiff's Reply (#116) p. 15, I find that it is not a *material* issue of fact.

A single occasion of causing an inmate to accept food on his tray which he considered to be "contaminated with pork products" does not constitute a substantial burden on his religious exercise. Abdulhaseeb v. Calbone, 600 F.3d 1301 (10th Cir. 2010) [RLUIPA]. Therefore, I find that plaintiff's tamale pie claim fails as a matter of law.

The facts giving rise to plaintiff's claim that defendants violated his First Amendment rights by requiring him to fry pork are as follows.

Plaintiff was assigned to work in the OSP kitchen as a server on the food line on October 17, 2006. Declaration of Keith Davis (#76) ¶ 5. At the time plaintiff began working in the OSP kitchen, all inmates were required to perform the duties of the position they were assigned. There was no distinction made between Muslim inmates and other inmates and the duties they performed. Id., ¶ 8.

On January 19, 2007, plaintiff filed Discrimination Complaint No. 07-01-02, complaining that Food Services Manager Davis reprimanded him for refusing to serve pork items. Declaration of Jacob Humphreys (#78) ¶ 12 and Attachment 3, p.

7 - FINDINGS AND RECOMMENDATION

1. Superintendent Belleque denied plaintiff's discrimination complaint because "the investigation failed to support the allegations made in the complaint." Id. ¶ 13 and Attachment 3, p. 4. The response stated: "There is no current policy that outlines this issue as you have stated. Mr. Conner and Mr. Siala agree that Muslims should be excused from handling or serving pork as part of their duties in the kitchen ... No policy can cover every circumstance, however, there is no need to require Muslim inmates to handle pork. As a Muslim, you should notify your supervisor of your religion and that you are not allowed to handle pork. Every effort will be made to provide a work program that does not require you to handle pork." Id.

The affidavit of Keith Davis states: "In early 2007, after Inmate Jones filed a discrimination complaint bringing to light the issue of Muslim inmates handling pork. The practice was revisited by staff from OSP Food Services and Religious Services. A decision was made that Muslim inmates would not be required to perform duties in the OSP kitchen that required them to handle pork. The inmate must tell his supervisor if he is a Muslim and does not want to handle pork. He will then be reassigned to another position in the kitchen. Declaration of Keith Davis (#76) ¶9.

On February 7, 2007, plaintiff was reassigned as a cook. "Plaintiff requested to be reassigned as a cook and knew that the duties of a cook included preparing dishes containing

8 - FINDINGS AND RECOMMENDATION

pork.   Declaration of Keith Davis (#76) ¶ 6.

Plaintiff alleges that on July 8, 2007, defendant McBride "ordered plaintiff . . .   to go fry pork loins." Amended Complaint #15. P. 7. Plaintiff further alleges that he informed defendant Kutnar, defendant McBride's supervisor that he was a Muslim and was not to prepare pork." Defendant Kutnar allegedly consulted with defendant Ridderbusch by telephone and then told plaintiff that he had to prepare the pork because 'those higher up had ordered it so.'" Id., p. 8. Defendant Ridderbusch subsequently informed plaintiff that he had consulted with Chaplin Holbrook who had approved plaintiff preparing the pork loins. Id. It is not clear from plaintiff's allegation whether he is alleging that Chaplin Holbrook was consulted immediately prior to the incident, or previously. In any event, Chaplin Holbrook's determination that it was "Okay" for Muslims to prepare pork was allegedly based on a memorandum by defendant O'Connors. Amended Complaint (#15) p. 8.

Plaintiff "in great anger and humiliation, went out and prepared pork loins resulting in Plaintiff becoming totally drenched in pork grease." Id.

Plaintiff alleges: "On July, 2007, at 9:35 a.m., plaintiff was told to go to food service office. Defendant Ridderbusch, in the presence of Defendant Davis, said that Plaintiff having to prepare the pork was because the last memorandum Defendant Ridderbusch had received said it was okay

for Plaintiff to prepare pork, and Defendant Ridderbusch had been trying to pull it up on the computer but was unable to do so.    Defendant Ridderbusch stated he found out a new memorandum was issued in January 2007, saying Muslim inmates should not serve or prepare pork and he was low on the totem pole because his name was not on the memorandum to be sent to Defendant Ridderbusch."  Id. p. 9.

In order to establish a free exercise violation, plaintiff must show that defendants burdened the practice of his religion by preventing him from engaging in conduct mandated by his faith, without any justification reasonably related to legitimate penological interests. Turner v. Safley, 482 U.S. 78, 89 (1987).    Thus, "when a prison regulation impinges on inmates constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."  Id., at 89-93.

A determination whether a prison regulation is reasonably related to legitimate penological objectives requires a consideration of 1.) Whether the regulation has a logical connection to the legitimate government interests invoked to justify it; 2.) Whether there are alternative means of exercising the rights that remain open to the inmates; 3.) The impact that accommodation of the asserted constitutional right will have on other inmates, guards, and prison resources; and 4.) The presence or absence of ready alternatives that fully accommodate the prisoner's right at de minimis cost to the

10 - FINDINGS AND RECOMMENDATION

valid penological interests. Id., McCabe v. Arave, 827 F.2d 634, 637 (9th Cir. 1987); see also, O'Lone v. Estate of Shabazz, 482 U.S. 342 (1987); Casey v. Lewis, 4 F.3d 1516 (9th Cir. 1993); Friend v. Kolodziecczak, 923 F.2d 126 (9th Cir. 1991); Harper v. Wallingford, 877 F.2d 728 (9th Cir. 1989).

Defendants argue persuasively that applying the Turner test to the facts of the present case demonstrates that any infringement on plaintiff's free exercise of religion resulting from the policy of not distinguishing between Muslim and non-Muslim inmates in the performance of required kitchen duties was justified by legitimate penological objectives.

However, the record reflects that the policy regarding Muslim inmates had been revised to accommodate the exercise of their First Amendment rights, and that defendants violated the revised policy. Applying the Turner analysis in these circumstances is problematic, but not necessarily dispositive.

Assuming that defendants conduct requiring plaintiff to prepare pork impinged on plaintiff's right to the free exercise of his religion under the First Amendment, I find that defendants are entitled to qualified immunity from liability.

Officials performing their official duties are entitled to qualified immunity from liability in damages where they did not violate plaintiff's clearly established constitutional rights, Harlow v. Fitzgerald, 457 U.S. 800 (1982); Act Up!/Portland v. Bagley, 988 F.2d 868 (9th Cir. 1993); see also,

11 - FINDINGS AND RECOMMENDATION

<u>Anderson v. Creighton</u>, 483 U.S. 635, (1987).   The Ninth Circuit has articulated a two part analysis for determining an official's qualified immunity: (1) was the law governing the official's conduct clearly established? [and] (2) Under the law, could a reasonable officer believed the conduct was lawful? <u>Neely v. Feinstein</u>, 50 F.3d 1502, 1507 (1995) (citing <u>Act Up!/Portland v. Bagley</u>, 988 F.2d 868, 871 (9th Cir. 1993)).

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." <u>Saucier v. Katz</u>, 533 U.S. 194, 202 (2001).

Plaintiff cites several cases for various proposition regarding the handling of pork my Muslim inmates. *See,* Plaintiff's Reply (#116) p. 16. However, plaintiff has not identified any authority for the proposition that he has a clearly established First Amendment right not to cook or handle pork.[2]

Assuming *arguendo* that the facts alleged by plaintiff implicate his constitutional rights, I find that plaintiff has failed to demonstrate that it would be clear to a reasonable correctional officer that requiring an inmate to follow

---

[2]Plaintiff acknowledges: "[T]here is no direct precedential case authority within the Ninth Circuit giving guidance to this court in determining whether defendants have violated plaintiff's constitutional rights by compelling plaintiff to prepare pork and whether defendants are to be afforded qualified immunity." Plaintiff's Reply (#116) p. 4.

established kitchen policy would be illegal or violate the inmates rights.

The established kitchen policy of not distinguishing between Muslim and non-Muslim inmates in their kitchen duties had been challenged in  a complaint filed by plaintiff. Defendant Belleque's response to plaintiff's complaint indicated that Muslim inmates would not be required to handle pork as part of their kitchen duties.     Defendants' determination that plaintiff should not be exempt from pork frying was apparently based on a memorandum setting forth the former established kitchen policy.  Apparently a subsequent memorandum was distributed which reflected the change in policy resulting from plaintiff's discrimination complaint and the subsequent memorandum had not been received by the defendants involved with the decision to require plaintiff to fry pork.

Plaintiff's   own   allegations   indicate   there   was considerable discussion of the issue and that the "chain of command" and possibly Chaplin Holbrook were consulted before it was determined that plaintiff would be required to cook the pork. See Amended Complaint (#15) p. 7 - 9. Plaintiff's allegation concerning the defendants' uncertainty over the matter indicate the lack of a clearly established right of which they should have known. Thus, I find that even if plaintiff's First Amendment rights were violated as a result of  defendants requiring him to fry pork on July 8, 2007,

13 - FINDINGS AND RECOMMENDATION

defendants' conduct did not violate a clearly established constitutional right of which a reasonable officer in the situation would have known, and that defendants are entitled to qualified immunity from liability for that conduct.

Plaintiff alleges that defendants violated his Islamic belief by failing to ensure that the cooking grills are adequately clean so that "foods cooked on the grills were contaminated with residual amounts of pork grease." Amended Complaint (#15) p. 10.

The grills at OSP are cleaned in a manner accepted by industry standards. Declaration of Keith Davis (#135) ¶ 5. "After food is cooked on the grill in the OSP kitchen, kitchen workers clean the grill by using vegetable oil and a stone to clean the surface of the grill. The oil is removed from the grill with a dough knife or piece cardboard and then the grill is wiped down with a cloth. Chemicals are not used to clean the grills. The grills are heated before use which sanitizes them." Id. Plaintiff argues that the cleaning do not comply with various regulations. However, he has failed to establish that the method used to clean the grills results in "contamination" by "residual amounts of pork grease."

Moreover, inmates are able to see what foods are being cooked on the grills, and do not have to choose that item. Id. ¶ 6. Inmates who do not wish to eat food prepared on the grill can select the meat alternative menu items. Id. ¶ 7.

Plaintiff does not contest that inmates are offered non-

14 - FINDINGS AND RECOMMENDATION

meat alternative selections on the main line food trays at lunch and dinner. Plaintiff argues that "a Muslim inmate is unable to get alternative for the breakfast meal other than peanut butter substitute for the bacon or pork sausages." Plaintiff's Sur-response (#153) p. 8. However, plaintiff's own exhibits show that a variety of foods are offered at breakfast, including cereal, fruit, and bread products - in addition to peanut butter. Id., Exhibit A.

Under the Turner test set forth above, plaintiff's contaminated grill claim fails. Even if the frying grills are "contaminated" in a way that offends plaintiff's religious beliefs, the prison offers alternative meals that plaintiff can select, giving him an alternative means to meet his religious needs.

Plaintiff alleges that on January 3, 2007, he submitted a discrimination complaint to defendant Dodson "regarding food service staff catching a Mexican inmate with a large unauthorized bag of potato chips and the inmate not being given a daily failure as Plaintiff had been given December 6, 2006." Amended Complaint (#15) p.11. Plaintiff also alleges that on January 11, 2007, he submitted a discrimination complaint to defendant Dodson "regarding food service staff catering to the desires of a White racially prejudiced inmate assignment of job duties." (Sic) Id. Plaintiff further alleges that defendant Dodson "refused to file/process" the complaints which allegedly violated plaintiff "right of

15 - FINDINGS AND RECOMMENDATION

redress of grievances under the First Amendment of the United States Constitution." Id.

Plaintiff's claim in this regard does not state a claim under the First Amendment because inmates have "no legitimate claim of entitlement to a grievance procedure." Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988); see also, Ramirez v. Galza, 334 F.3d 850, 860 (9th Cir. 2003) ("inmates lack a separate constitutional entitlement to a specific grievance procedure.") Plaintiff has not demonstrated that defendants failure to process his grievance concerning the alleged disparate treatment of other inmates imposed an "atypical and significant hardship" on plaintiff or affected the degree of restraint imposed or duration of plaintiff's sentence. Therefore, his grievance claim "lacks the necessary constitutional foundation" to state a claim under 42 U.S.C. § 1983. Ramirez v. Galaza, supra at p. 860.

Plaintiff alleges that defendants "violated (his) right to equal protection by enforcing the disciplinary rules against plaintiff in a racially discriminatory manner." Amended Complaint (#15) p. 15. Plaintiff's claim is based on the fact that he was issued a misconduct report on October 29, 2008, and that the other ["white"] inmate involved in the altercation was not disciplined. Id.

The record reflects that on October 29, 2008, plaintiff received a misconduct report charging him with violation of Inmate Rules of Prohibited Conduct, Rule 2(c) (Assault III).

16 - FINDINGS AND RECOMMENDATION

Concise Statement of Material Facts (#73), Attachment E,
Declaration of Colleen Clemente. An inmate commits Assault III
when he or she commits a unilateral attack or is involved in
a mutual fight. Id.; see also OAR 291-105-0015(2)(c). A
hearing was convened on November 1, 2008, but was continued
until December 1, 2008, at plaintiff's request.    In the
intervening time,, staff interviewed witnesses and reviewed
video surveillance. Id.   Plaintiff testified at the hearing
and had an opportunity to review the investigation, including
witness statements. Hearings Officer Clemente found plaintiff
in violation of the rule.[3]

Plaintiff does not allege any procedural due process
violations in connection with the disciplinary hearing.  His
equal protection claim is  based solely upon the allegation
that the "misconduct report completely omitted Glen Leonard's
conduct towards plaintiff" and because defendants "failed to
institute disciplinary misconduct proceedings against" the
other inmate. Amended Complaint (#15) p. 15.

Hearings  Officer  Clemente  found  based  on  witness
interviews that plaintiff committed a unilateral assault and
that there was no evidence of mutual assault. Declaration of
Coleen Clemente (#80), p. 4.   There is nothing in the record

---

[3]Plaintiff's own allegations support the hearing officer
decision.    Plaintiff  alleges  that  another  inmate  verbally
instigated an argument and that he took physical action towards the
inmate.   Plaintiff acknowledges that he "put his hand in Glen
Leonard's chest and pushed him backwards, not hard, out of
plaintiff's face/space."  Amended Complaint (#15) p. 14.

17 - FINDINGS AND RECOMMENDATION

other than plaintiff's own speculative opinion that the
misconduct report was racially motivated. Plaintiff was issued
the misconduct report because there was evidence that he had
violated the rule.   He has not demonstrated that he was
treated differently from others similarly situated. I find
that there is no genuine issue of material fact as to
plaintiff's equal protection claim and that defendants are
entitled to judgment as a matter of law.

Plaintiff's Amended Complaint did not allege a claim
under the Religious Land Use and Institutionalized Persons Act
("RLUIPA"),   42  U.S.C.  §  2000cc-1(a),  et  seq.    However,
plaintiff aregues in his brief that RLUIPA is a basis for
plaintiff's pork handling claim.[4]  Reply to Defendants' Motion
(#116) p. 18 - 19. However, as argued by Defendants, under the
statutory safe harbor provision of RLUIPA, plaintiff does not
have a claim where, as here, the practice he complains of has
been changed. See, 42 U.S.C. § 2000cc-3(e) ("A government may
avoid the preemptive force of any provision of this Act by
changing the policy or practice that results in a substantial
burden on religious exercise ...") As discussed above, the
practice complained of by plaintiff in this case - ie. - the
policy of requiring inmates with religious objections to
handle pork has been changed.

Even if plaintiff had properly pled claims under RLUIPA,

---

[4]Plaintiff also argues RLUIPA as a basis for his "tamale pie
claim."   However, as discussed above that claim fails as a matter
of law.

such claims would fail because monetary damages are not available under RLUIPA, Alvarez v. Hill, 2010 WL 582217 at * 10-*15 (D. Or. Feb 12, 2010, and injunctive relief is improper where plaintiff cannot allege a continuing violation.

In order to establish entitlement to injunctive relief, plaintiff must demonstrate that he "has sustained or is immediately in danger of sustaining some direct injury as a result of the challenged official conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical." Los Angeles v. Lyons, 461 U.S. 95, 102 (1983). In other words, there must be a real and immediate threat of future injury to plaintiff by the defendants.

All of plaintiff's claims in this case are related to his incarceration at OSP. The record reflects that plaintiff is no longer housed at OSP. See, Notice of Change of Address (#85).[5] Plaintiff has not established that he is currently being subjected to a practice that violates his constitutional rights. Therefore, his request for injunctive relief is moot. See, Dilly v. Gunn, 64 F.3d 1365, 1368-69 (9th Cir. 1995) (holding inmate's request for injunctive relief was rendered moot by his transfer to another prison).

In addition, as noted above, the practices of kitchen management regarding the preparation or serving of pork at OSP

---

[5]Plaintiff is currently housed at the Snake River Correctional Institution.

have been changed. Declaration of Keith Davis (#71), ¶ 9.
Therefore, plaintiff cannot make the requisite individualized
showing that there is a very significant possibility that he
will be harmed in the future by the practices he seeks to
enjoin. *See*, <u>Sample v. Johnson</u>, 771 F.2d 1335 (9th Cir. 1995).
Accordingly, defendants are entitled to judgment as a matter
of law as to plaintiff's requests for injunctive relief.

Based on all of the foregoing, I find that there are no
genuine issues of material fact remaining in this case and
that defendants are entitled to judgment a  matter of law.
Defendants' Motion for Summary Judgment (#73) should be
allowed.  This proceeding should be dismissed.

This recommendation is not an order that is immediately
appealable to the Ninth Circuit Court of Appeals.  Any notice
of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate
Procedure, should not be filed until entry of the district
court's judgment or appealable order.  The parties shall have
fourteen (14) days from the date of service of a copy of this
recommendation within which to file specific written
objections with the court. Thereafter, the parties have
fourteen (14) days within which to file a response to the
objections.  Failure to timely file objections to any factual
determinations of the Magistrate Judge will be considered a
waiver of a party's right to <u>de</u> <u>novo</u> consideration of the
factual issues and will constitute a waiver of a party's right
to appellate review of the findings of fact in an order or

judgment  entered  pursuant  to  the  Magistrate  Judge's
recommendation.

    *I certify that an appeal from an order adopting this*
*order would be taken in good faith,*

    DATED this **28** day of October, 2011.

                           _____
                     Thomas M. Coffin
                     United States Magistrate Judge